# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH DRETAR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-cv-11666** |
| **BANK OF NEW YORK MELLON TRUST COMPANY, N.A.** | **SECTION D (1)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment, filed by defendant, The Bank of New York Mellon Trust Company, N.A. ("BONY").[1] Plaintiff opposes the Motion,[2] and BONY has filed a reply.[3] After reviewing the briefs submitted by the parties and the applicable law, the Motion for Summary Judgment is **GRANTED**.

### I. Factual and Procedural Background

On or about October 11, 2018, Kenneth Dretar, as managing member of the Louisiana Housing Program, LLC, and as the independent administrator of the succession of Debra Dretar, filed a Petition to Annul Sale in Civil District Court for the Parish of Orleans, Louisiana, against BONY and John Vicari.[4] In the Petition, Plaintiff seeks to annul the October 4, 2018 Sheriff's Sale of certain immovable property located at 207 Warrington Drive, New Orleans, Louisiana 70112 (hereafter, "the property"). Plaintiff alleges that BONY held a mortgage on the property and

---

[1] R. Doc. 27.
[2] R. Doc. 30.
[3] R. Doc. 35.
[4] R. Doc. 1-1. John Vicari was subsequently dismissed from the lawsuit on May 2, 2019, for failure to prosecute. *See* R. Doc. 12.

that Vicari was the mortgagor. Plaintiff alleges that BONY initiated an executory process foreclosure action on the property in state court, and that on or about October 4, 2018, the property was sold to Ronald Ward at an Orleans Parish Sheriff's Sale.[5] Plaintiff further alleges that on October 17, 2006, Vicari, the owner of the property, executed a Bond For Deed, giving Louisiana Housing Program, LLC an "ownership interest, or at a minimum, a mortgage interest, in the property."[6] Plaintiff claims that the sole member of the Louisiana Housing Program, LLC was his sister, Debra Dretar, and that Ms. Dretar paid the mortgage note on the property from 2006 until 2016 with Louisiana Housing Program, LLC checks.[7] Plaintiff asserts that Ms. Dretar died on January 10, 2016, and that he was appointed the Independent Administrator of her succession.[8]

Plaintiff further alleges that, "At all pertinent times, defendant, the Bank of New York knew that Plaintiff had an interest in the property because Plaintiff was paying the note on the property."[9] Plaintiff claims that, upon information and belief, Vicari informed BONY of the sale of the property through the Bond For Deed. Plaintiff alleges that he never received notice of the auction of the property, even though BONY knew of the Bond For Deed.[10] Plaintiff argues that, as a matter of law, he was entitled to notice of the sale based upon the Bond For Deed, and that the

---

[5] R. Doc. 1-1 at ¶¶ 2, 3, 4.
[6] *Id.* at ¶ 6.
[7] *Id.* at ¶¶ 7, 8.
[8] *Id.* at ¶ 7.
[9] *Id.* at ¶ 9.
[10] *Id.* at ¶ 11.

October 4, 2018 sale of the property is null and void due to BONY's failure to give Plaintiff notice of the sale.[11]

On November 28, 2018, BONY removed the case to this Court under 28 U.S.C. § 1332(a), claiming that this Court has diversity jurisdiction over the case.[12] Shortly thereafter, BONY filed an Answer to the Petition, admitting that it held a mortgage on the property, that the property was the subject of the foreclosure action when it was sold at an Orleans Parish Sheriff's Sale on October 4, 2018, and that Ronald Ward was the highest bidder.[13] As an affirmative defense, BONY asserts that, "Some or all the claims asserted and relief requested by Dretar fail as a matter of law because the vendor under a bond-for-deed contract does not grant or convey any ownership rights or mortgage interest in immovable property to the bond-for-deed purchaser."[14] As a result, BONY asserts that it had no obligation to notify Plaintiff of the seizure and sale of the immovable property.[15]

BONY filed the instant Motion for Summary Judgment on October 29, 2019, seeking dismissal of all of Plaintiff's claims with prejudice and at Plaintiff's cost.[16] Relying upon the United States Supreme Court's holding in *Mennonite Board of Missions v. Adams*, BONY argues that only a party possessing a "substantial property interest . . . is entitled to notice reasonably calculated to apprise" him of a pending

---

[11] *Id.* at ¶ 12.
[12] R. Doc. 1
[13] R. Doc. 8 at ¶¶ 2, 3, 4.
[14] *Id.* at p. 4.
[15] *Id.* at p. 5.
[16] R. Doc. 27.

foreclosure sale.[17] BONY further argues that Louisiana law defines a bond for deed contract as "a contract to sell real property, in which the purchase price is to be paid by the buyer in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer."[18] Thus, BONY asserts that a bond for deed contract is a contract to sell immovable property, not an actual sale or lease of said property.[19] BONY argues that Plaintiff does not have any ownership rights or mortgage interest in the underlying property because it is well settled that a bond for deed contract does not grant or convey any ownership rights or mortgage interest in immovable property to the bond for deed purchaser.[20]

BONY further asserts that, under the terms of the Bond For Deed in this case, the purchaser was to make monthly installment payments until the full sum of the agreement was paid, and only after all the payments were completed was Vicari to transfer title of the property.[21] BONY finds it "equally persuasive" that the Bond for Deed included the following clause that explicitly prohibited a transfer of ownership interest until certain terms were met:

> Seller and Purchaser agree that the Act of Sale has been placed in escrow with Regan Law Firm, LLC as Escrow Agent for all parties; that title to the Property has not been conveyed; and that the Sale has not been and shall not be considered delivered to Purchaser until released from

---

[17] R. Doc. 27-1 at p. 6 (quoting *Quantum Res. Mgmt., LLC v. Pirate Lake Oil Corp.*, 2012-1472 (La. 3/19/13), 112 So.3d 209, 215 (quoting *Mennonite Bd. Of Missions*, 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983))) (internal quotation marks omitted).
[18] R. Doc. 27-1 at p. 6 (*quoting* La. R.S. 9:2941) (internal quotation marks omitted).
[19] R. Doc. 27-1 at p. 6 (citing cases).
[20] *Id.* (citing *Cosey v. Cosey*, 364 So.2d 186, 187 (La. Ct. App. 1st Cir 1979)).
[21] R. Doc. 27-1 at p. 8 (*citing* R. Doc. 1-1 at pp. 6-11).

    escrow by the Escrow Agent to the Purchaser pursuant to the provisions of this Agreement.[22]

BONY also points out that paragraph 21 of the Bond For Deed specifies that it is not a sale, providing that:

    PURCHASER AND SELLER UNDERSTAND AND ACKNOWLEDGE THAT THIS AGREEMENT IS NOT A SALE, TRANSFER OR CONVEYANCE OF THE PROPERTY DESCRIBED HEREIN, BUT IS AN ESCROW AGREEMENT OBLIGATING ESCROW AGENT TO RECORD THE SAID ACT OF CASH SALE ON A FUTURE DATE, <u>PROVIDED</u> PURCHASER TIMELY COMPLIES WITH ALL OF THE TERMS, CONDITIONS AND OBLIGATIONS OF THIS ESCROW AGREEMENT.[23]

  BONY then directs the Court to the language in the Bond For Deed that specifies that, "It is stipulated and agreed by all parties that this Bond for Deed/Escrow Agreement is *not* to be recorded."[24] BONY points out that, in fact, the Bond For Deed was not recorded, and that it bears no recordation stamps or information.[25] BONY argues that whether it had actual or constructive knowledge of the Bond For Deed is legally irrelevant because it was not a party to the contract, and conveyance documents, such as mortgages, must be recorded with the recorder of mortgages in the parish where the immovable property is located in order to affect third parties.[26] BONY asserts that when determining who was entitled to notice of the Sheriff's Sale, it relied on the absence from the public records of Plaintiff's

---

[22] R. Doc. 27-1 (*quoting* R. Doc. 1-1 at p. 6).
[23] R. Doc. 27-1 at p. 8 (*quoting* R. Doc. 1-1 at p. 11) (emphasis in original).
[24] R. Doc. 27-1 at p. 8 (*citing* R. Doc. 1-1 at p. 11, ¶ 22) (emphasis added by BONY).
[25] R. Doc. 27-1 at p. 8.
[26] R. Doc. 27-1 at p. 9 (citing *McClaim v. NMP, LLC*, 2018-297 (La. App. 5 Cir. 12/12/18), 262 So.3d 409, 419).

purported interests and provided notice to the appropriate persons or entities appearing in the public records.[27] As such, BONY asserts that Plaintiff was not entitled to notice of the Sheriff's Sale.

Finally, BONY argues that the debtor may not annul a Sheriff's Sale if the property is in the hands of an innocent third person.[28] BONY asserts that the law is well settled that, "once the property has been sold to one other than the mortgagee, the mortgagor cannot annul the sale and recover the property because of defects which he might have urged prior to the sale."[29] BONY argues such is the case here, and that Plaintiff may not annul the October 4, 2018 sale of the property because the property is in the hands of an innocent third party, Ronald Ward. As such, BONY argues that it is entitled to summary judgment.

Plaintiff opposes the Motion, but instead of addressing the merits of BONY's arguments, Plaintiff asks the Court to delay its ruling on the Motion until additional discovery is completed.[30] Plaintiff asserts that he propounded written discovery requests to BONY seeking records of Vicari's mortgage payments on the property, and that such information may be helpful in opposing BONY's Motion for Summary Judgment.[31] Plaintiff explains that BONY objected to such discovery requests pursuant to La. R.S. 6:333, the Louisiana Lender Confidentiality Statute, which prevents a bank from providing customer records and information to a non-customer,

---

[27] R. Doc. 27-1 at p.10.
[28] *Id.* at p. 11 (citing *First Guar. Bank v. Baton Rouge Petroleum Ctr., Inc.*, 529 So.2d 834, 840 (La. 1988)).
[29] R. Doc. 27-1 at p. 11 (citing *First Guar. Bank*, 529 So.2d at 840 (collecting cases)).
[30] R. Doc. 30.
[31] *Id.* at pp. 2-3.

such as Plaintiff.³² Plaintiff claims that it began the process of obtaining Vicari's signed statement allowing the disclosure of his private financial records shortly after receiving BONY's objections, but that it had not yet obtained Vicari's signed statement when BONY filed the instant Motion.³³ As such, Plaintiff asks the Court to delay its ruling on the instant Motion until the requested information is released and provided to Plaintiff.³⁴

Plaintiff further argues that in *Mennonite*, the Supreme Court firmly established that all interested parties must receive notice of the State's taking of property, so that all interested parties can submit their objections.³⁵ Plaintiff argues that because "LHP is obviously an interested party having paid the monthly notes to BONY for almost ten (10) years," BONY was required under the law to provide notice to Plaintiff before the sale of the property.³⁶ Plaintiff, however, also acknowledged that during a prior status conference with the Court, "it was recognized that LHP has an uphill battle, and that if, through discovery, it cannot provide sufficient evidence, then summary judgment may be warranted."³⁷

In response, BONY points out that Plaintiff provided no response to its Statement of Uncontested Material Facts and provided no substantive response to any argument made by BONY in the Motion.³⁸ Asserting that, "Arguments not raised

---

³² *Id.* (*citing* R. Doc. 30-2 at p. 1).
³³ R. Doc. 30 at p. 3.
³⁴ *Id.*
³⁵ *Id.* at p. 4 (citing *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)).
³⁶ R. Doc. 30 at p. 4.
³⁷ *Id.* at p. 5.
³⁸ R. Doc. 35 at p. 1.

in opposition to a motion to dismiss are waived," BONY argues that Plaintiff "has conceded that the failure to record the Bond For Deed precludes any requirement to provide [Plaintiff] with *Mennonite* notice in the foreclosure action."[39] BONY further argues that Plaintiff's request for additional discovery is untimely under Federal Rule of Civil Procedure 56(d), as Plaintiff failed to submit an affidavit or declaration to this Court showing that, for specified reasons, it cannot present facts essential to justify its opposition, as required by Rule 56(d).[40] BONY further asserts that the information sought by Plaintiff is irrelevant in light of Plaintiff's failure to record the Bond For Deed.[41] BONY argues that, "Simply put, whether BONY knew or should have known that Dretar may have made payments on Vicari's loan is irrelevant as the law is clear that Dretar was not entitled to Mennonite notice due to his failure to record the Bond For Deed."[42]

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if there is no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.[43] No genuine issue of material fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the non-

---

[39] *Id.* at p. 2 (citations omitted).
[40] *Id.* at p. 5.
[41] *Id.*
[42] *Id.*
[43] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

moving party.⁴⁴ A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."⁴⁵ Additionally, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.⁴⁶ While all reasonable inferences are drawn in favor of the non-moving party, the non-moving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.⁴⁷

Summary judgment is also proper if the non-moving party fails to establish an essential element of a claim, upon which that party will bear the burden of proof at trial.⁴⁸ The non-moving party must, therefore, direct the Court's attention to specific evidence in the record which demonstrates that he can satisfy a reasonable jury that he is entitled to a favorable verdict.⁴⁹ In determining whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party.⁵⁰ The Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.⁵¹ Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so, "only where

---

⁴⁴ *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
⁴⁵ *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
⁴⁶ *Anderson*, 477 U.S. at 247-47, 106 S.Ct. at 2510.
⁴⁷ *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quotation and quotation marks omitted).
⁴⁸ *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2552.
⁴⁹ *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.
⁵⁰ *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774-75, 167 L.Ed.2d 686 (2007).
⁵¹ *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[52]

### III. Law and Analysis

The parties have succinctly stated the issue before the Court: whether an unrecorded bond for deed creates a legal obligation to provide *Mennonite* notice of the sale of immovable property. In this case, it is undisputed that a Bond For Deed was executed on October 17, 2006, between John Vicari, the owner of the property, and Louisiana Housing Program, LLC.[53] It is also undisputed that the Bond For Deed was not recorded.[54] The Court finds that the decision not to record the Bond For Deed was made intentionally by the parties thereto, as the Bond For Deed clearly provides that, "It is stipulated and agreed by all parties that this Bond for Deed/Escrow Agreement is *not* to be recorded."[55] The Court further finds that it is undisputed that a third-party purchased the property at the Orleans Parish Sheriff's Sale and is now the owner of the property.[56] Plaintiff does not allege that BONY failed to follow the appropriate process for advertisement and sale of a foreclosure action.[57]

In *Mennonite Board of Missions v. Adams*, the United States Supreme Court held that, "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in

---

[52] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quotation and quotation marks omitted).
[53] *See* R. Doc. 27-1 at p. 2; R. Doc. 30 at p. 2.
[54] *See* R. Doc. 27-1 at p. 2; R. Doc. 30.
[55] R. Doc. 1-1 at p. 11, ¶ 22 (emphasis added).
[56] *See* R. Doc. 1-1 at ¶ 4; R. Doc. 27-1 at p. 2.
[57] R. Docs. 1-1 & 30.

commercial practice, if its name and address are reasonably ascertainable."[58] The Supreme Court further held that the facts of the case were controlled by the Court's analysis in *Mullane v. Central Hanover Bank and Trust Company*, wherein the Court held that, "[P]rior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[59]

In the instant case, BONY has provided uncontradicted evidence demonstrating that it provided notice, as required by law, in advertisements prior to the October 4, 2018 sale of the property.[60] While all reasonable inferences are drawn in favor of Plaintiff in the summary judgment context as the non-moving party, the case law is clear that Plaintiff cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.[61] In his five-page opposition brief, Plaintiff fails to direct the Court's attention to specific evidence in the record that raises a genuine issue of material fact in this case, or demonstrates that he can satisfy to a reasonably jury that he is entitled to a favorable verdict.[62] Accordingly, the Court finds that no genuine issue of material fact exists in this case, and that BONY is entitled to summary judgment on all of Plaintiff's claims.

---

[58] 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983) (emphasis in original).
[59] *Id.*, 462 U.S. at 795, 103 S.Ct. at 2709 (quoting *Mullane*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).
[60] R. Doc. 27-3.
[61] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).
[62] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## IV. Conclusion

Based on the foregoing, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment,[63] filed by defendant, The Bank of New York Mellon Trust Company, N.A. ("BONY") is **GRANTED. IT IS FURTHER ORDERED** that all of Plaintiff's claims against Defendant, BONY, are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, January 29, 2020.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[63] R. Doc. 27.